This is an action to recover damages for personal injury, alleged to have been caused by the negligence of the defendant. The complaint alleges that the plaintiff was an employee of the defendant railway company in the capacity of section man or assistant section foreman; that on 11 July, 1911, the section foreman ordered the plaintiff, together with three other employees of the company, to go over the section and tighten bolts; that the section foreman and the portion of the crew with him were engaged in the usual work on the section; that the section foreman advised the plaintiff that the water bucket would be kept with the foreman and his portion of the crew, and instructed the plaintiff and the others with him to get water at the nearest places as they proceeded along the line tightening bolts.
That about 2:30 o'clock in the afternoon they had reached a fill some 12 or 15 feet in height; that prior to this time the company, through its employees, had permitted the sides of the fill to become dangerous by cutting bushes and small trees with a hook, leaving them sharp and pointed, sprouts growing out and weeds growing up on the sides of the fill, concealing the dangerous condition of the right of way; that the plaintiff, not knowing the dangerous condition of the right of way, started down the sides of the fill for water, stumbled on one of these hidden snags or stumps and fell and was injured.
The plaintiff testified as follows: "I am the plaintiff in this action. I live 4 miles west of Cary, N.C. On 11 July, 1911, I was at work on the section for the Seaboard Air Line Railway between Cary and Apex. I went to work for the Seaboard about the 16th or 17th day of June of that year. I was assistant section foreman and my wages (292) were $1.25 per day. Mr. E. D. Medlin was section foreman. On the morning of 11 July the foreman ordered four of us to go along the section and tighten bolts. The three others and myself were J. A. Marcum, Hinton Hobby, and Charlie Singleton, and the section foreman and the other members of the crew remained behind at work on the right of way. The section foreman told us that he would keep the water bucket with him and those behind, and we should get water at the *Page 235 
nearest places along the line. About 2 o'clock in the afternoon we were tightening bolts on a fill near the 11-mile-post. The fill is 75 or 100 yards long. It was very hot and we were thirsty. Arthur Marcum and I started to a well about 300 yards away, to get water. We were not far from the middle of the fill. We started down the embankment, when my foot struck one of the snags, and in throwing my other foot ahead to try to catch, I fell — rather, sat down — on one of the snags. On the sides of the fill were many snags where the bushes had been cut off with a hook some time before, leaving the snags 8 or 10 inches or 1 foot high. These snags were very sharp. Sprouts had grown out from these stumps or snags, and weeds had grown up about 3 feet high and very thick, hiding the snags. I had never worked on the right of way, and did not know the snags were there. I have worked on the section on the Southern Railroad and have observed other railroads, and never knew one in as bad condition as this with reference to the snags and bushes. I was rendered unconscious, stayed in the Rex Hospital one month. I haven't been able to work regularly since. I am not well now. In April, 1912, I went to work for the Carolina Power and Light Company as conductor. I worked twelve hours a day. When I was working with the section force on the morning of this accident, whenever we felt like it we stopped and got water and came back; that was the order we had. Mr. Medlin wasn't with me at the time of the accident; Mr. Hobby was about two rail behind me; a rail is about 30 feet long; I think he was going after water, too. Mr. Marcum had gone down the fill and was a little ways from me; I think he went under the fence. There was a barb-wire fence at the bottom of the fill. The fill is about 15 feet high and extends something like 40 or 50 feet (293) towards Apex; I guess we were nearer the end towards Apex than towards Cary. The accident happened on a bright sunny day about 2 o'clock. I could see the bushes, but couldn't see the ground where I was going. The fill is a gradual slope. The section force are supposed to go over this fill once a year and cut down the bushes for the purpose of keeping them from getting dry and burning property. The rule is that they cut the bushes once a year. I guess they do that so that the engines will not set them on fire. The stick was much larger than a pencil, and 8 inches high. In cutting the bushes they used a blade something like a reap hook. By going to the end of the fill you could get to Mr. Spence's well, where I was going, without having to pass through the bushes. Nobody pointed out the place where I should go. I could start for water from any point."
At the conclusion of the evidence, his Honor allowed the motion of the defendant for judgment of nonsuit, and the plaintiff excepted and appealed. *Page 236 
After stating the case: The rule that the employer must furnish the employee a reasonably safe place to work is fully recognized, and has been applied in numerous decisions of this Court; that it is equally well settled that before one can recover damages for personal injury on account of negligence, he must prove a breach of duty, causing him damage, and we find in the record no evidence of a breach of duty.
The plaintiff was injured several miles from a station, while going down a steep embankment, by falling on a small snag 6 or 8 inches high, which had been left after the defendant cut down the bushes on the right of way, to avoid danger from fire.
We would not hold that leaving an obstruction of this character on an embankment in the country, not usually used by the employees of the defendant or other persons, would be evidence of negligence, and the liability of the defendant would not be increased by the fact that (294) the snag on which the plaintiff was injured was the result of cutting bushes on the right of way to protect the roadbed and the property of adjoining landowners from fire. The plaintiff was not ordered to go down the embankment, and it appears from his evidence that he not only selected the place for going down, but that he could have avoided the bushes altogether by going to the end of the embankment, a distance of 75 yards.
Affirmed.